FILED

2013 Aug-05  PM 04:12
U.S. DISTRICT COURT
N.D. OF ALABAMA

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ALABAMA
## MIDDLE DIVISION

**MONICA STROZIER,**                          ]
                                              ]
    Plaintiff,            ]
                                              ]
    vs.                   ]    CV 12-J-3453-M
                                              ]
**CAROLYN W. COLVIN,**                        ]
**Commissioner of the Social**               ]
**Security Administration**,                  ]
                                              ]
    Defendant.

## MEMORANDUM OPINION

The plaintiff appeals from the decision of the Commissioner of Social Security denying her supplemental security income.  The case is now properly before the court.  *See* 42 U.S.C. § 405.

At the time of the August 2010[1] hearing before the Administrative Law Judge ("ALJ"), the plaintiff was 38 years old, having been born August 24, 1971, and had a 10th grade education (R. 42, 212).  The plaintiff alleges an inability to work since April 2007 due to pain and swelling  from her waist down and in her right hand (R. 43-46).[2]  She claims a need for surgery on her ankle and left knee due to degenerative joint disease, but her orthopedic doctor will not do them because she is overweight[3] (R. 44-45).  She is approximately 5'5" tall and weighs 338 lbs (R. 42).  Her pain averages an 8 or 9 out of ten

---

[1]The plaintiff had a first hearing in March 2010 (R. 101).  Due to a large volume of missing medical records, the ALJ continued the hearing to allow time for the plaintiff to obtain the same (R. 103-106).

[2]In her application for benefits, the plaintiff alleged an inability to work due to "[c]oncentration & vision problems, severe headaches, rheumatoid arthritis" (R. 227).

[3]There is no medical evidence in the record which reflects either a need for surgery or a statement from an orthopaedic doctor that the plaintiff must lose weight before the same.

every day (R. 46).  The plaintiff also complains of daily headaches, which she was told were caused by bulging discs at the top of her spine[4] (R. 47).  She was also told her high blood pressure medication was making her migraines worse (R. 48).  She feels over-whelmed and nervous (R. 49-51).

The plaintiff believes she can walk about 3/4 of a block before having to stop, stand for 15 minutes at a time, and sit indefinitely as long as she can move around (R. 51).  She can not lift a sack of potatoes or a gallon of milk (R. 52).  In September of 2008 the plaintiff quit caring for her grandchild because she could not keep up and needs help shaving because she cannot hold a razor in her right hand (R. 52).  She only cooks things she can microwave and does not go shopping (R. 53).  She has trouble getting up and moving in the morning, needing a few hours before she can move around (R. 55).

The month before the hearing, the plaintiff threw her medicine away because she wanted to kill herself (R. 57).  She alleges she has had about twelve suicide attempts (R. 57).  However, her most recent prior attempt was in 1994, and no medical records documenting any of these attempts were submitted to the Commissioner (R. 58).

According to Dr. Douglas McKeown, the Medical Expert who testified at plaintiff's hearing, her medical records reflect anxiety and recent depression (R. 59-60).  Testing reflected that plaintiff fell in the borderline range of intellectual functioning and had significant depressive symptoms (R. 61).  However, Dr. McKeown also noted that the plaintiff had no more than mild or moderate impairments from depression (R. 61).

---

[4]No medical evidence supports a diagnosis of bulging discs.

The Vocational Expert who testified at the hearing noted that plaintiff's only past relevant work which met the substantial gainful activity requirement would have been as a convenience store clerk, which was semi-skilled and defined as light work, but actually heavy as described by plaintiff (R. 66-67).  When asked whether there were any job positions an individual of plaintiff's age, education and work experience, limited to sedentary work, with no climbing, no kneeling, no crawling, and with mild limitations on responding appropriately to supervision and co-workers, moderate limitations in detailed work instructions and mild to moderate limitations on the ability to maintain attention, concentration and pace, could perform, the VE testified jobs such as order clerk, small parts assembler, and springing machine tender met those limitations (R. 68-69).  Adding a sit/stand option to the limitations stated would have no impact on the number of jobs available (R. 69).  Elimination of positions which required no more than frequent fine manipulation would remove the small parts assembler as a possible job, but not the other two, and an additional job of tender napper would still meet those limitations (R. 69-70).

The plaintiff's medical records reflect she was seen in April 2008 for ankle and knee pain[5] (R. 291).  The plaintiff reported ankle swelling, but stated her ankle was not painful (R. 291).  She returned in June 2008 for a follow up visit for knee pain, which on x-ray was noted to be a small joint effusion (R. 285).  She was prescribed Naprosyn and Tramadol, but noted the Naprosyn caused stomach upset and the Tramadol did not help (R. 285).  The range of motion in plaintiff's left knee was limited secondary to pain, and it was noted to be tender (R. 286).  She was referred for an MRI and told she "must lose weight to help

---

[5]Although the plaintiff claims disability beginning in 2007, no medical evidence from 2004 to 2008 is included in the record.

reduce stress on hips/knees/ankles..." and that "she must lose weight if she hopes to have any meaningful reduction in pain & improvement in functionality" (R. 286).

The plaintiff was also seen in July 2008 by Dr. Geoffrey Connor, M.D., for knee pain, who noted the plaintiff had minimal improvement from an 11 pound weight loss (R. 298).

The plaintiff was referred to Dr. Hasmukh Jariwala in September 2008 for a consultative evaluation (R. 309).  She was noted to weigh 309 pounds, and have 20/20 vision, although she complained of headaches and an inability to see well (R. 310).  Mild swelling was noted at the fingers of plaintiff's right hand (R. 311).  The plaintiff's range of motion was normal except for minimal to mild impairment in her right wrist and left knee (R. 311).  In conclusion, Dr. Jariwala opined that he saw no evidence of any impairment in plaintiff's joints other than her left knee, which he stated was mildly to moderately impaired, and her right hand, which he believed minimally to mildly impaired (R. 311).  He also stated he saw no proof upon examination of rheumatoid arthritis (R. 311).

The plaintiff was seen at the emergency room in October 2008 for a headache (R. 353-356).  A CT Scan on her head was negative (R. 357).

Dr. Jariwala became plaintiff's treating physician in January 2009 (R. 388).  His initial diagnoses included rheumatoid arthritis, apparently by history, high blood pressure and obesity (R. 389, 391).  In April 2009 he sent a letter stating in full:

> Re: Monica St. John
> This letter is efforts to assist her in getting addition funds and other necessities for she and her children.
>
> She has several health issues that keeps from working: djd, copd, hypertension and depression.
>
> Sincerely
> /s/

4

Hasmukh N. Jariwala, M.D.

(R. 322). His treatment notes from April 2009 reflect diagnoses of COPD, hypertension, DJD and depression (R. 384).  A September 2009 note adds fibromyalgia as a diagnosis (R. 381), but later medical records do not reflect the same.  Rather, in November 2009 her records show pleurosy, back pain, and high blood pressure, and in January 2010, she was noted to suffer from arthritis in both hands, high blood pressure, morbid obesity, and gall stones (R. 379-380).  February 2010 records include the above and depression (R. 378).

The plaintiff was seen at an emergency room on May 9, 2009, complaining of pain on her right side and an earache (R. 346, 348).  She was given Toredol and Cipro and discharged (R. 349-352).  She returned on May 27, 2009, and gallstones were found by ultrasound (R. 344).  On June 1, 2009, the plaintiff was admitted to the hospital with a diagnosis of acute cholecystitis (inflamation of the gallbladder) and cholelithiasis (gallstones), morbid obesity, anxiety and depression (R. 326, 344).  She then changed her mind and left against medical advice (R. 326).

In April 2010 the plaintiff was referred for a psychological evaluation (R. 368).  She was noted to be extremely depressed, but her judgment was grossly intact and her insight was fair to good (R. 369).  She was found to function in the borderline range of intellectual abilities, suffer from major depression and panic disorder and assigned a Global Assessment of Functioning score of 38 (R. 369-370).  Dr. Alan Blotcky, who conducted the examination, opined that the plaintiff's ability to respond appropriately to supervision and coworkers and to perform work related activities fell in the moderate to extreme range in most categories (R. 370-371).

The ALJ found that the plaintiff does have impairments which are severe, specifically obesity, degenerative joint disease, anxiety, depression and borderline intellectual functioning, but none of which met or medically equaled any of the impairments listed in Appendix 1 of Subpart P, 20 CFR Part 404  (R. 21).   The ALJ specifically considered whether the plaintiff met the requirements of Listing 12.04 or 12.06, and found that she did not (R. 21).  The ALJ therefore concluded that the plaintiff had the residual functional capacity to perform a limited range of sedentary work, with limitations of requiring a sit/stand option, no ladders, ropes or scaffolding, no kneeling or crawling, only frequent fine manipulation with the right hand, and no unprotected heights or hazardous machinery (R. 23).  Further non-physical limitations included mild limitations in responding appropriately to supervision, co-workers and the general public, understanding, remembering, and carrying out simple instructions and using judgment, and moderate limitations in maintaining attention, concentration and pace and moderate limitations in remembering detailed instructions or using judgment in the same (R. 23).  Based on these limitations, the Medical Expert's testimony, and the Vocational Expert's testimony, the ALJ found that the plaintiff could not return to any past relevant work, but there were jobs which existed in significant numbers which the plaintiff could perform (R. 32).  The ALJ concluded that the plaintiff was not disabled within the meaning of the Social Security Act (R. 33).

The plaintiff argues that the ALJ failed to consider COPD as a severe impairment. Plaintiff's memorandum at 10.  However, the ALJ specifically addressed this diagnosis, finding that it was "diagnosed the day prior to completing the form and has not been addressed at any time before or since" (R. 31).  As to the plaintiff's mental limitations, as

assessed by Dr. Blotcky, the court finds a complete lack of evidence to support the severity of limitations as set forth by him.

The court finds that the ALJ considered the plaintiff's allegations of pain, but found plaintiff's testimony regarding her limitations from pain not to be entirely credible (R. 31). For example, the plaintiff asserted she suffers from panic attacks weekly, but no medical record even references such an allegation (R. 31). Similarly, the plaintiff alleges bulging discs and rheumatoid arthritis, for which neither are supported by any medical record, although both can be confirmed by medical testing (R. 31). The ALJ also found the plaintiff's testimony undermined by her activities of daily living, her caring for an infant while claiming disability, and the lack of any medical support for her allegations of disability (R. 29-31).

The court's role in reviewing claims brought under the Social Security Act is a narrow one. The scope of its review is limited to determining: 1) whether there is substantial evidence in the record as a whole to support the findings of the Commissioner, and 2) whether the correct legal standards were applied. *See Richardson v. Perales*, 402 U.S. 389, 390, 401, 91 S. Ct. 1420, 28 L. Ed. 843 (1971); *Lamb v. Bowen*, 847 F.2d 698, 701 (11th Cir.1988). The Court may not decide facts, reweigh evidence, or substitute its judgment for that of the Commissioner. *See Bloodsworth v. Heckler*, 703 F.2d 1233, 1239 (11th Cir.1983). However, this limited scope does not render affirmance automatic,

> for "despite [this] deferential standard for review of claims . . . [the] Court must scrutinize [the] record in its entirety to determine reasonableness of the decision reached." *Bridges v. Bowen*, 815 F.2d 622 (11th Cir. 1987).

*Lamb*, 847 F.2d at 701. Moreover, failure to apply the correct legal standards is grounds for reversal. *See Bowen v. Heckler*, 748 F.2d 629, 634 (11th Cir.1984).

The court has specifically considered the plaintiff's arguments concerning whether COPD is a severe impairment as it related to the plaintiff, and whether Dr. Blotcky's assessment should have been given greater weight.

The ALJ carefully and meticulously considered the plaintiff's impairments and found that the same could reasonably be expected to produce some of the limitations the plaintiff alleged.  However, the ALJ did not believe plaintiff's testimony as to the severity of her symptoms, i.e., their intensity, persistence and functionally limiting effects. *See* 20 C.F.R. § 416.929(c) ("When the medical signs or laboratory findings show that you have a medically determinable impairment(s) that could reasonably be expected to produce your symptoms, such as pain, we must then evaluate the intensity and persistence of your symptoms so that we can determine how your symptoms limit your capacity for work...."). The court finds the ALJ properly evaluated the plaintiff's complaints, given her medical records and her report of daily activities.

The issue in this appeal is one of credibility.  "Credibility determinations are the province of the ALJ." *Moore v. Barnhart*, 405 F.3d 1208, 1212 (11th Cir.2005).  Accordingly, "[a] clearly articulated credibility finding with substantial supporting evidence in the record will not be disturbed" on appeal. *Foote v. Chater*, 67 F.3d 1553, 1562 (11th Cir.1995). Accordingly, the decision of the Commissioner of the Social Security Administration will be affirmed by separate order.

Done, this  5 [th]  of  August, 2013.

INGE PRYTZ JOHNSON
SENIOR U.S. DISTRICT JUDGE